UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Nicole Zimmerman,<br><br>            Plaintiff<br><br>v.<br><br>The Church of Jesus Christ of Latter-Day Saints, et al.,<br><br>            Defendants | Case No. 2:25-cv-00206-CDS-MDC<br><br>**Order Granting Defendant's Motion to Dismiss**<br><br>[ECF No. 15] |

Plaintiff Nicole Zimmerman brings this action against defendants The Church of Jesus Christ of Latter-Day Saints (LDS) and Karey Zimmerman, alleging (1) a sexual abuse of a minor claim against Karey;[1] (2) a negligence claim against LDS; and (3) a violation of 18 U.S.C. § 2423(a) against both defendants for illegally transporting a minor for sex. *See* Am. compl., ECF No. 4. LDS moves to dismiss the negligence and § 2423(a) claims under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 15. Zimmerman filed an opposition. *See* Opp'n, ECF No. 21. Therein, she concedes that the § 2423(a) claim should be dismissed but maintains that the negligence claim should not be dismissed. *Id.* This motion is now fully briefed. *See* Reply, ECF No. 22. For the reasons set forth herein, I grant LDS's motion to dismiss with leave to amend.

I.    **Background**[2]

Zimmerman brings this action against her adoptive father, Karey Zimmerman, and the LDS church that she attended with her adoptive family. ECF No. 4. The complaint sets forth the following allegations. LDS operates churches, meeting houses, wards, and stakes within Nevada, which bishops and presidents preside over under LDS's supervision and control. *Id.* at ¶ 10. LDS also handled Zimmerman's adoption through an affiliated entity called "L.D.S. Family Services." *Id.* at ¶ 17.

---

[1] Because Nicole Zimmerman and Karey and Michelle Zimmerman have the same last name, I refer to Karey and Michelle by their first names for clarity's sake. I intend no disrespect by doing so.

[2] Unless otherwise noted, the court only cites to Zimmerman's amended complaint (ECF No. 4) to provide context to this action, not to indicate a finding of fact.

Karey and his wife, Michelle, adopted Zimmerman when she was seven years old. *Id.* ¶ at 7. Soon after, Karey started to sexually abuse Zimmerman. *Id.* at ¶¶ 8, 18. She describes the sexual abuse as violent and "so traumatic that [she] needed to disassociate during the experience." *Id.* at ¶¶ 8, 18. And she asserts that there were at least three incidents of sexual abuse between the ages seven and eight. *Id.* at ¶ 18.

Shortly before her ninth birthday, Zimmerman told her adoptive mother, Michelle, about the abuse. *Id.* at ¶ 19. In turn, Michelle reported the abuse to the presiding bishop of the Utah ward that the family attended. *Id.* at ¶¶ 8, 19. Zimmerman alleges that, as a result of Michelle's report, Karey was "forced to stop taking sacraments and participating in religious ceremonies." *Id.* at ¶ 19. LDS neither reported the abuse to law enforcement nor took steps to stop the abuse. *Id.* at ¶¶ 8, 19. Such inaction flouts Utah law because LDS clergy members—as "mandatory reporters" under Utah law—had a legal duty to report the abuse to the proper authorities. *Id.* at ¶ 19.

When Zimmerman was around eleven years old, she moved to Las Vegas, Nevada, with her adoptive family and began attending LDS church services at a local ward. *Id.* at ¶ 21. Karey was motivated to move to Nevada so that the family could join a ward where the congregants and bishop were not aware of Zimmerman's sexual abuse. *Id.* at ¶ 24. LDS did not inform the local congregation leaders in Las Vegas of Karey's propensity to abuse minors, despite knowing that Zimmerman was still under Karey's care and that he would be around minors during church services. *Id.* at ¶ 21.

At around fifteen years old, Zimmerman moved to Anthem, Nevada, with her adoptive family. *Id.* at ¶ 22. There, Karey began sexually assaulting Zimmerman again. *Id.* He assaulted her at least five to ten times during her teenage years, *id.*, and manipulated her to not report the abuse again by saying that "the abuse was necessary to keep their family together." *Id.* at ¶ 23.

Based on these allegations, Zimmerman filed suit against LDS and Karey. ECF No. 4.

## II. Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, in reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Kwan v. SanMedica, Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Johnson v. Federal Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be cured by amendment, rendering amendment futile. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III. Discussion

LDS moves to dismiss Zimmerman's negligence and 18 U.S.C. § 2423(a) claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF No. 15. Zimmerman concedes to LDS's arguments as to the § 2423(a) claim, *see* ECF No. 21, so it is hereby dismissed without prejudice.

I also grant LDS's motion to dismiss the negligence claim. To "prevail on a negligence theory, a plaintiff must generally show that (1) the defendant owed a duty of care to the plaintiff,

(2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996). However, "no duty is owed to control the dangerous conduct of another or to warn others of dangerous conduct" unless a special relationship exists between the defendant and the victim, and the harm created by the defendant's conduct is foreseeable. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280–81 (Nev. 2009). Indeed, "[t]he foreseeability of harm is a predicate to establishing the element of duty." *Merluzzi v. Larson*, 610 P.2d 739, 742 (1980). "A negligent defendant is responsible for all foreseeable consequences proximately caused by his or her negligent act." *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980).

Zimmerman alleges that she told Michelle that Karey was sexually abusing her, and that Michelle informed the "presiding bishop of the ward [in Utah] about the sexual abuse." ECF No. 4 at ¶ 19. She asserts LDS was negligent because LDS clergies are mandated reporters, they "had a special relationship with minor congregates and owed a statutory duty to protect [Zimmerman]." *Id.* at ¶ 43. She further alleges that LDS violated its duty when it failed to communicate reports of sexual abuse to the proper law enforcement. *Id.* at ¶¶ 43, 21. She asserts that LDS took no steps to protect her. *Id.* at ¶¶ 26–27.

In its motion to dismiss, LDS argues that Zimmerman's negligence claim fails for two reasons: (1) the church did not owe plaintiff a common law duty of care; and (2) the reporting statute does not create a special relationship, nor does it create a private right of action. *See* ECF No. 15. In opposition, Zimmerman asserts that LDS owed a duty of care because LDS's adoption service created a special relationship, and LDS was negligent per se because it violated Utah Code § 80-2-602. *See* ECF No. 21. In its reply, LDS argues that there was no allegation of negligence in the adoption process, and that LDS was not the adoption agency, instead it was "L.D.S. Family Services" that facilitated her adoption. ECF No. 22 at 2–3. Finally, LDS also argues that Zimmerman has not properly pleaded a negligence per se claim. *Id.* at 5.

4

As a threshold matter, when considering Zimmerman's opposition, I apply Ninth Circuit precedent holding that, with limited exception not applicable here, I do not consider any material beyond the complaint, which includes allegations raised for the first time in the plaintiff's opposition. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003); *Johnson v. MINI of L.V.*, 2025 U.S. Dist. LEXIS 187298, *5 (D. Nev. Sept. 24, 2025). Zimmerman does not explicitly enumerate a negligence claim based on a special relationship formed by the adoption nor a negligence per se claim in her complaint. So I evaluate the motion based solely on the allegations in the complaint.

Zimmerman's negligence claim fails under her theory—LDS has a duty to report her abuse under mandatory reporting requirements. Zimmerman argues that LDS has two duties: (1) to report the allegations of sex abuse under "Utah law" and (2) to inform Nevada church leaders of the allegations, and their failure to do so was a conspiracy to permit Karey to continue abusing her. ECF No. 4 at ¶¶ 8, 19, 44. In her opposition, Zimmerman acknowledges that "there is [no] private right of action" under the Utah statute. ECF No. 21 at 7.  It is also unclear what duty the LDS clergy in Utah had to report the allegations to "local congregation leaders in Las Vegas," *see* ECF No. 4 at ¶ 21, or if Utah church leaders were even aware that Karey had moved the family to Nevada because such allegations are lacking from the complaint. And because Zimmerman does not provide any authority to support this argument, it is unpersuasive. So her negligence claim on this theory fails.

In her opposition, Zimmerman attempts to present another theory—liken LDS's assistance in Zimmerman's adoption process to a duty created when a child is in the foster care system. ECF No. 21 at 5–7. The Ninth Circuit has identified a "special relationship doctrine [that applies] to children in foster care." *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012). But this is because once "the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb v. Simmons*, 962 F.2d 1374, 1379

5

(9th Cir. 1992). Thus, foster children hold protected liberty interests in being shielded from harm inflicted by a foster parent and enjoy a special relationship with the state once they are placed in foster care. *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010). Zimmerman does not allege nor support a similar special relationship in her complaint. As argued by LDS, Zimmerman does not allege that LDS was negligent in the adoption process, nor that LDS was responsible for locating and vetting her adoptive parents. ECF No. 22 at 3. I agree. Zimmerman fails to explain and cite any authority to support a contention that a private adoption agency's services create the same special relationship as that between the state and a foster child. Further, it is unclear whether the agency that handled her adoption, "L.D.S. Family Services" is an entity that acts under LDS's authority, or how there was any other special relationship between her as the adopted child and her adoption agency. Consequently, I agree with LDS. Zimmerman has not alleged a legal duty of care based on the adoption agency/adoptee relationship. So her negligence claim also fails under this theory.[3]

In her opposition, Zimmerman also argues a negligence per se claim based on the mandatory reporting requirement.[4] To assert a negligence per se claim, one must show: (1) a defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused the injury; (3) the injury resulted from an occurrence the enactment was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was intended to protect. *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126 (9th Cir. 2017).

In *Fleming v. The Corporation of the President of the Church of Jesus Christ of Latter Day Saints*, the district court analyzed a similar negligence claim based on the church's failure to report abuse under a mandatory reporting statute. 2006 U.S. Dist. LEXIS 16602, at *7–8 (W.D. Wash. Mar.

---

[3] Zimmerman's argument that "the Church shared a special relationship with both [the plaintiff and Karey]," ECF No. 21 at 3, likewise fails as she does not point to any law that stands for the proposition that churches have a general duty of care to its members. In fact, she acknowledges that "no special relationship exists between a church and its membership simply by virtue of being a member." ECF No. 21 at 5.

[4] Zimmerman did not allege a separate claim for negligence per se under the reporting statute, but for judicial efficiency, I nonetheless address it herein.

6

21, 2006). The court was persuaded that Washington Code recognized an implied cause of action for victims of child abuse against mandatory reporters who failed to report. *See id.* The court also recognized that failure to report does not necessarily constitute negligence per se, *id.* at *13, but found liability may arise when the church's relationship with the abuser provides the means to access victims or when the church has knowledge of the risk and fails to act. *Id.* at *7–8, 19.

Here, the amended complaint does not set forth sufficient allegations for a negligence per se claim to survive the motion to dismiss. The compliant lodges generalized allegations that Karey and his family were members of the church, and that church leaders were mandatory reporters and are therefore liable. The complaint fails to allege what law, in any state, mandated LDS to report Zimmerman's alleged abuse. Without this information, the court cannot determine if LDS was in fact mandated to report the abuse, nor what obligations the church had to report abuse that took place in two different states and over a span of time. Consequently, the complaint fails to plausibly allege a negligence per se claim, so the defendant's motion to dismiss the negligence claim is granted. Because it is not completely clear that amendment would be futile, I grant the motion to dismiss but with leave to amend. *See DeSoto*, 957 F.2d at 658 (explaining leave to amend should be granted unless an amendment cannot cure the complaint's deficiencies).

## IV. Conclusion

IT IS HEREBY ORDERED that the defendant's motion to dismiss **[ECF No. 15]** is **GRANTED**. If Zimmerman chooses to amend her complaint, she must do so by December 24, 2025.

Dated: December 10, 2025

_____
Cristina D. Silva
United States District Judge